# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:22-cr-00109 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| NICHOLAS D. GEER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Defendant Nicholas Geer moves to suppress all evidence law enforcement seized during the search of his home on Derbyshire Road in Cleveland Heights, Ohio on February 8, 2022. (ECF No. 37.) Defendant argues that the warrant lacked probable cause and only authorized a search of the first floor of the residence. Further, he maintains that the evidence seized from the first floor of the residence lacks a connection to him because he lived in the basement. The United States opposes the motion, arguing that the affidavit supporting the warrant provided probable cause to support the warrant and, even if the warrant lacked probable cause, the good faith exception applies. (ECF No. 45.) For the reasons more fully explained below, the Court **DENIES** Defendant's motion.

## STATEMENT OF FACTS

On February 3, 2022, Task Force Officer Orlando Almonte of the Drug Enforcement Administration sought a search warrant for a residence in Cleveland Heights, Ohio and a residence in Willoughby Hills, Ohio. (ECF No. 46-1, ¶ 14,

PageID #262.)  The affidavit establishes the following facts, which remain to be proved at trial.

### A.    Contact with Confidential Informants

In September 2021, detectives with the Euclid Police Department made contact with a confidential source who had information about two alleged heroin dealers in the Cleveland area.  (*Id.*, ¶ 15, PageID #262–63.)  This confidential source claimed to have purchased heroin from a dealer known as "Chris," a young black male with distictive gold dreadlocks who lived near Coventry Road in Cleveland Heights.  (*Id.*, ¶ 17, PageID #263.)  One detective recognized this description of "Chris" as matching that of Defendant Nicholas Geer.  (*Id.*, ¶ 18, PageID #264.)  Detectives presented Mr. Geer's Ohio BMV photo and Facebook profile to the confidential source, who confirmed the photo and profile depicted "Chris."  (*Id.*, ¶ 19)

In December 2021, detectives interviewed another confidential source known to the Cleveland Police Department who had information about Mr. Geer.  (*Id.*, ¶ 25, PageID #267.)  This confidential source reported visiting Mr. Geer at the Cleveland Heights residence and purchasing heroin from him.  (*Id.*, ¶ 26.)  Detectives presented Mr. Geer's Ohio BMV photo to this confidential source, who confirmed the photo depicted "Chris."  This confidential source also knew that the real first name of "Chris" was "Nick."  (*Id.*)

### B.    Surveillance

After meeting with these two confidential sources, detectives began to surveil the Cleveland Heights residence.  (*Id.*, ¶ 27.)  Detectives continued to surveil the residence throughout December 2021 and January 2022.  (*Id.*, ¶ 45, PageID #273.)

They conducted a trash pull and discovered that more than one family lived in the building.  (*Id.*)  The landlord confirmed there were three tenants in the building on each of the first, second, and third floors.  (*Id.*, ¶ 46.)  The first-floor tenant, Jeffvon Gill, was Mr. Geer's half-brother.  (*Id.*)  Detectives knew of Gill because he was present during the search of Mr. Geer's previous residence for suspected drug trafficking.  (*Id.*)  During their surveillance, detectives also saw a BMW registered to Mr. Geer parked in the driveway of the Cleveland Heights residence.  (*Id.*, ¶ 70, PageID #280.)

### C.    Controlled Buys

On December 13, 2021, detectives coordinated a controlled buy of drugs from Mr. Geer.  (*Id.*, ¶ 40, PageID #271.)  While detectives were preparing for the controlled buy, they witnessed Mr. Geer leave the Cleveland Heights residence, get into a black Jeep driven by an unknown individual, and exit the Jeep minutes later. (*Id.*, ¶ 42, PageID #271–72.)  Detectives believed this short-term activity was "indicative of drug trafficking." (*Id.*, ¶ 42, PageID #272.)  Then, an undercover agent drove the first confidential source to the Cleveland Heights residence.  (*Id.*, ¶ 43.) The source exited the car and walked to the residence, where he or she purchased drugs from Mr. Geer near the rear door.  (*Id.*)  At the time, there was a white Chevrolet truck with a snowplow on the front parked in the driveway, which the source later confirmed Mr. Geer sometimes drove to conduct drug sales.  (*Id.*, ¶ 44.) On January 19, 2022, testing confirmed the substance Mr. Geer sold the confidential source was a mixture of heroin, 4-ANPP, fentanyl, and cocaine.  (*Id.*, ¶ 44, PageID #272–73.)

On January 13, detectives coordinated another controlled buy from Mr. Geer. (*Id.*, ¶ 51, PageID #274–75.)  The first confidential source called Mr. Geer and arranged to meet him at an intersection in Cleveland.  (*Id.*, ¶ 52, PageID #275.) Mr. Geer arrived driving the white Chevrolet truck.  (*Id.*, ¶ 53.)  Mr. Geer sold the confidential source purported heroin.  (*Id.*)  On January 27, detectives coordinated another attempted controlled buy from Mr. Geer. (*Id.*, ¶ 70, Page ID #280.)  Although detectives did not complete this transaction, Mr. Geer indicated that he had heroin and crack cocaine available, using street names for these drugs.  (*Id.*, ¶ 71, PageID #281.)

## STATEMENT OF THE CASE

Based on the affidavit, a United States Magistrate Judge signed a search warrant for the first floor of the Cleveland Heights residence.  (ECF No. 37, PageID #176; ECF No. 45, PageID #244.)  The affidavit specifically identified the area to be searched as the first floor of the residence on Derbyshire Road in Cleveland Heights, Ohio.  (ECF No. 46-1, ¶ 14, PageID #262.)

In the search, officers seized a loaded Taurus handgun, suspected fentanyl, plastic bags of suspected narcotics, a digital scale with residue, a cellphone, and U.S. currency from the first floor of the residence.  (ECF No. 1-1, ¶ 11, PageID #5.)  A further search of Defendant's BMW, which was parked in the driveway, produced several bags of a leafy substance, a cutting agent, and one scale with residue.  (ECF No. 37, PageID #176–77.)  During the search, officers arrested Mr. Geer in the basement of the residence.  (ECF No. 1-1, ¶ 10, PageID #5; ECF No. 37, PageID #179;

ECF No. 45, PageID #244.)  Mr. Geer represents that he resided in the basement of the residence, not on the first floor.  (ECF No. 37, PageID #179.)  For purposes of this motion, the Court accepts that representation as true.

On March 15, 2022, a grand jury indicted Defendant on seven counts of possession with intent to distribute heroin; being a felon in possession of a firearm and ammunition; and possession of a firearm in furtherance of a drug trafficking crime.  (ECF No. 14.)  Defendant seeks to suppress the evidence obtained from the Cleveland Heights residence pursuant to the search warrant.  (ECF No. 37.)  He argues that the affidavit does not establish probable cause that he was engaged in drug trafficking activity on the first floor of the residence or to search his residence, which was in the basement of the house.  (*Id.*, PageID #179.)  In response, the United States argues that probable cause supported the search warrant and articulable facts connect Defendant to the first floor of the residence.  (ECF No. 45, PageID #250.)  Further, the United States argues the good faith exception applies.  (*Id.*, PageID #252–54.)

## ANALYSIS

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Probable means "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" and

exists "when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (cleaned up).

A judge's determination of probable cause receives great deference. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The issuance of a warrant is not scrutinized after the fact under a *de novo* standard, which would be inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to warrants. *Id.* (quotation omitted). The issuing judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. When reviewing that determination, the Court simply ensures that the judge had a substantial basis for concluding that probable cause supported the warrant. *Id.* at 238–39. "Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)).

## I.    Probable Cause

The crux of Defendant's argument is that the search warrant did not include the basement of the Cleveland Heights residence, where he lived, and that the evidence does not support a nexus between him and the first floor of the residence, where detectives seized the contraband. (ECF No. 37, PageID #179–80.) For these reasons, Defendant argues that the evidence cannot be "reasonably tied" to him and

should be suppressed.  (*Id.*, PageID #180.)  The parties dispute where Defendant lived.  (ECF No. 45, PageID #251.)  As noted, for purposes of this motion, the Court assumes that Mr. Geer lived in the basement.

### I.A.    Probable Cause for the Search of the First Floor

Taking as true Defendant's position that Mr. Geer lived in the basement, the Court determines that probable cause supports the warrant.  The affidavit in support of the warrant set forth facts indicating that Defendant was engaged in drug trafficking and that contraband or evidence of drug trafficking would be found in the Cleveland Heights residence.  It is undisputed that the search warrant was limited to the first floor of the residence.  (ECF No. 37, PageID #176; ECF No. 45, PageID #244.)  Two confidential sources provided information that a drug dealer going by the name "Chris" sold them drugs and described "Chris" as a young black male with gold dreadlocks, a description that matched Mr. Geer.  (ECF No. 46-1, ¶¶ 15–17 & 26, PageID #262–63 & #267.)  Detectives corroborated the sources' descriptions of "Chris" as Mr. Geer by presenting them with photos.  (*Id.*, ¶¶ 19 & 26, PageID #264 & 267.)  Euclid detectives' first confidential source also confirmed the drug dealer he knew as "Chris" lived in Cleveland Heights near Coventry Road, where the Cleveland Heights residence is located.  (*Id.*, ¶ 17, PageID #263.)

Surveillance confirmed Mr. Geer's frequent presence at the Cleveland Heights residence, and detectives witnessed him engage in activity "indicative of drug trafficking" at the residence, further corroborating and demonstrating the reliability of the information from the sources.  (*Id.*, ¶¶ 41, 43, 63 & 70, Page ID #271–72, #278 & #280.)  Two controlled buys and one attempted controlled buy also support a

probable cause determination that Defendant Geer was trafficking in drugs.  (*Id.*, ¶¶ 40–44, 51–53 & 70–71, PageID #271–75 & #280–81.)

Further, even if Mr. Geer resided in the basement, the affidavit articulated facts connecting him to the first floor of the residence.  When the confidential source purchased drugs from Mr. Geer on December 13, 2021, the transaction occurred at the back door of the residence.  (*Id.*, ¶ 43, PageID #272.)  Although the affidavit does not expressly say that that the back door connects to the first floor, it does identify the house as having three floors and makes no mention of a basement.  (*Id.*, ¶ 46, PageID #273.)  By process of elimination, then, that transaction must have occurred at the back door to the first floor.  In any event, the tenant on the lease for the first-floor unit was Mr. Geer's half-brother, Jeffvon Gill.  (*Id.*)  And detectives knew Gill was present during Mr. Geer's drug trafficking activities at a prior residence.  (*Id.*)

For all these reasons, the Court determines that there was probable cause for the search of the residence on Derbyshire Road in Cleveland Heights, Ohio.

### I.B.    Probable Cause for the Basement

That leaves Defendant's argument that the evidence seized from the first floor lacks a connection to him because he lived in the basement.  This argument lacks merit for two reasons.

First, to the extent Defendant argues that there was not sufficient evidence connecting him to the contraband found on the first floor, the warrant refutes that claim.  As discussed above, a confidential source purchased drugs from Mr. Geer at the back door of the residence on the first floor, where Mr. Geer's half-brother lived.  (*Id.*, ¶ 46.)  Those facts in the warrant sufficiently tie Mr. Geer to the first floor.

Second, law enforcement arrested Defendant in the basement.  (ECF No. 1-1, ¶ 10, PageID #5; ECF No. 37, PageID #179; ECF No. 45, PageID #244.)  But Defendant has not demonstrated how or why his arrest in the basement should result in exclusion of evidence officials seized on the first floor pursuant to a warrant supported by probable cause.

## II.    Good Faith Exception

Because probable cause supports the search of the first floor of the Cleveland Heights residence and the evidence Defendant seeks to suppress was seized from the first floor, the Court need not determine, in the alternative, whether the good-faith exception to the exclusionary rule articulated in *United States v. Leon*, 468 U.S. 897 (1984), applies.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to suppress. (ECF No. 37.)

**SO ORDERED.**

Dated:  November 4, 2022

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio